GRBen, J.
delivered the opinion of the court.
It appears from this record, that in 1834, Walter B. Morris, Elijah Boddie and Eli Odom, formed a partnership for the manufacture of paper, in Sumner county; the necessary buildings and machinery to be erected on atract of land, of 162 acres, owned by Morris, for which he had given 1810, and had received a deed of conveyance to himself from Allen’s adm’r, dated 11th November, 1834. Morris was to be interested in said concern one-half, and Boddie and Odom one-fourth each.
The company proceeded to the erection of buildings and machinery, and at considerable outlay of capital put the paper mill into operation. In 1835, R. M. Boyers, with the assent of the other partners, purchased the interest of Odom in the said concern, and in 1837, he purchased the interest of Boddie; and thus he became an equal partner with Morris. In January, 1840, Morris sold to Boyers one-half of his interest in said establishment, who thereby became owner of three-fourths thereof. The business continued in operation until 1840, when Morris *206 becoming greatly indebted, executed a deed of trust to George A. Wylie, for the said 162 acres of land, with its appurtenances, to secure creditors; preferring in said deed the individual debt due from himself to the defendant Elliott. The trustee advertised the sale of said property in 1842, when Boyers appeared and stated, the partnership concern was largely indebted; and insisted that said land, paper mill and fixtures were partnership property, and that he was entitled to have it applied to the payment of the partnership debts, in preference to the individual creditors of the partners. The property was sold by the trustee, and Boyers files this bill to set aside said sales, and apply the said property to the satisfaction of partnership debts.
It is unnecessary to notice the cross bill, or to make a minute statement of the various points which are raised in this voluminous record; inasmuch as the discussion here, has been confined to the questions,
1. Whether the tract of land was brought into the concern as partnership property, and if so,
2. Whether Boyers did anything at the time the deed of trust was made, by which his lien was waived in favor of that created by the trust deed.
1st. Was this 162 acre tract of land, brought into the business as partnership property?
By reference to the articles of co-partnership dated 21st August, 1835, we find the preamble reciting, “that in the month of February last, Walter B. Morris, Eli Odom and Elijah Bod-die, agreed to build a paper mill on Cumberland river, a short distance below the residence of Eli Odom; one-half of said mill to be owned by said Walter B. Morris, one-fourth by Eli Odom, and one-fourth by Elijah Boddie; the parties to contribute towards the cost of the establishment in proportion to their respective interests in the same.” The article goes on to state, that Boyers had purchased the interest of Odom, and had become a partner to the extent in all respects that was Odom, and that the undersigned agree to carry on the business in the name of Morris, Boyers & Boddie, each to pay according to his interest, outlays and expenses, and the profits to be divided in the same proportion.
*207 On the 12th of August, 1835. the following entry was made in the books of the firm by Morris.
“Paper Mill, Dr.
“To WalteR B. MoRRis, 160 acres of land $408.” On the 17th of August, 1835, Morris conveyed, by deed of that date, one-half of this 162 acre tract of land, to his partners, Boyers and Boddie.
Mr. Boddie, the former partner, states in his deposition, that it was his understanding at the time of the partnership, that the land upon which the mill was erected, was to come into the firm at a fair price, and the title to be in firm. He does not recollect a word that passed on the subject, but he makes the statement upon the ground of the absurdity of men’s expending $16,000 upon a piece of land, without any claim, title or interest therein.
From these documents, and this evidence, we have no doubt, but that it was the intention and purpose of these'partners, that the land upon which the mill was erected, should become partnership property. The article of partnership states, that the parties had agreed to build a paper mill, one-half of said mill to be owned by Morris, one-fourth by Odom, and one-fourth by Boddie, the parties to contribute towards the cost of the establishment in proportion to their respective interests; and that Boyers had purchased Odom’s interest, and had become a partner. This article of itself constitutes the parties, partners in the ownership of this establishment. They were to contribute towards its costs in proportion to their respective interests, and the mill was to be owned by them in the proportions before mentioned. And they were to own it, not as part owners, having separate interests, but the article says, Boyers “has become a partner.” So of course, Morris & Boddie, were partners, and the whole were owners of the mill, as a partnership firm; contributing in their respective proportions towards its erection; to the expenses of carrying on the business, and were to divide the profits among them in the same proportion.
If they were to be owners of the mill, they must of necessity be owners of the land upon which it was built, because the mill was but an appurtenance to the land.
*208 So the entry on the partnership books, by Morris, in which he charges the firm with this 162 acres of land, is of itself, sufficient evidence that it was brought into the firm as partnership property. If a partner advances money, or puts property' in the business, the firm becomes debtor to him by that amount, and the property or money belongs to the firm. This entry is precisely such an one as should be made upon such occasion. It has no sense, or meaning, if it was not intended to vest in the firm the title to this land. By the entry, the firm stands debtor the amount charged; and the entry states that sum to be so charged for 162 acres of land. Of course the meaning and legal effect of the entry is, that Morris has sold, or placed in the partnership concern, this 162 acres of land, and the firm thereby became owner thereof.
It is well settled, that if land be purchased with partnership funds, though the legal title may be in one of the partners only, such land is partnership property. Story on Partnership, 2 Story Eq., sec. 1207: 2 Hump. 459. Hunt vs. Benson. And there can be no difference between a purchase ‘from a third person, and a purchase from a partner. If the partnership funds be advanced to one of the partners for lands on which to carry on the business, or which is the same thing, if he gets credit on the books of the firm for the land, intending to vest it in the business, it thereby becomes, in equity, the property of the partnership thought he may retain the legal title in himself.
But it is said, that on this entry, the price charged, is only half the value of the land, and that this proves it was not the intention to bring this land into the business. We do not see how any such consequence would follow. If the entry states in plain, unambiguous terms, that the paper mill is debtor for 162 acres of land; does it not mean that the paper mill has acquired the land, for which the charge is made in the book? If it does not, then no merchant’s entry, means, that the customer becomes owner of the article for which the price is charged. Whether there is a mistake in the effect of the entry upon the state of the parties, is quite another matter, and is a subject we are not called upon here to discuss. The question is, does the *209 entry signify a tranfer of this land from Morris to the paper mill firm? And, we think, it most unquestionably does.
It is not necessary to notice the evidence of Mr. Boddie. But it may be observed, that it is competent to prove by other evidence than the articles of partnership the amount of capital furnished to the business, by each partner; whether such capital be advanced in money or property; and that is the object of Mr. Boddie’s evidence. He proves that it was the understanding, that Morris brought this land into the partnership.
Upon the whole, we think, it is conclusively established, that this land and mill are partnership property. And if partnership property, it is not denied, but that the co-partnership has a lien upon it for the satisfaction of the partnership debts, and that no one of the partners can dispose ofitforthe payment, or security of his individual debts, until the partnership creditors are all paid.
2d. That when this deed of trust was executed by Morris, and before it was registered, he presented itrto Boyers, who examined it, suggested a slight alteration, and expressing himself satisfied with it, advised that it be registered; and that this is a waver of his lien.
The facts in this record, show, that the firm was largely in debt, at the time this deed was made, and that Boyers has made advances for the establishment, to a very large amount, beyond any means that have come into his hands. In this state of things — that he should have consented, that his co-partner, who was interested only to the amount of one-fourth of the business, and who he knew was insolvent — should take the whole of the partnership effects, and apply them to the payment of his private debts, leaving him to pay an enormous amount of partnership debts, out of his private funds, is incredible.
The witness may have misconceived what occurred; or Boy-ers may have acquiesedin a tranfer by Morris, for the security of his private debts, of such interest as he might have after the payment of thepartnership debts; butthat he intended to waive his lien, and permit the effects to be applied to his partners’private debts, in preference to the partnership debts, we do not for *210 a moment believe. But we do not choose to criticise the witness, and state all the grounds of this opinion.
3. Objection was made to the deposition of young Mr. Boy-ers, in the court below; because Morris, one of the defendants, was not notified of the time and place it was taken. The other-defendants were notified, and Morris had been discharged in bankruptcy long before the deposition was taken, and before the trial, upon leave, amended his answer, and pleaded his eer-tertificate of discharge.
The Chancellor permitted the deposition to be read, as to the two defendants who had notice. In this, we think, he was right. Morris had no further interest in the case; and if the deposition had been rejected, and had been retaken, after the certificate of bankruptcy was pleaded, Morris would not have been entitled to notice. It was, therefore, properly read.
Affirm the decree.